**JUDGE LYNCH**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

TRUSTEES OF THE 1199SEIU
NATIONAL BENEFIT FUND FOR
HEALTH AND HUMAN SERVICE
EMPLOYEES,

08 CV 4473

___ CV _____ ( )

Plaintiff,

-against-

JEAN LEOPOLD MERILAN, Administrator
of the ESTATE of MARIE S. DORLUSACA,
and ALAN CHORNE, ESQ.

Defendants.

-------------------------------------------------------x

**ORDER TO SHOW CAUSE FOR
PRELIMINARY INJUNCTION
AND TEMPORARY
RESTRAINING ORDER**

Upon the Affidavit of Annmarie Peart, sworn to the 12th day of May, 2008, and upon the

copy of the Complaint and the Memorandum of Law hereto annexed, and good cause having

been shown, it is hereby

ORDERED, that the above-named Defendants show cause before a motion term of this

Court, Honorable _Gerard E. Lynch_, in Room _6B_, United States Courthouse, at 500

Pearl Street, New York, NY, on the _27th_ day of _May_, at _10_:00 o'clock in the

_fore_noon of that day, or as soon thereafter as counsel may be heard, why an order should not

be issued pursuant to Fed. R. Civ. P. 65:

A.  Enjoining Defendant Alan R. Chorne, Esq., his officers, agents, servants, employees

and attorneys from disbursing any proceeds received in connection with the State or Federal

Court Action as described in the Complaint, out of settlement with a third party; or, in the event

of impossibility of such action, enjoining Defendant Jean Leopold Merilan, her officers, agents,

servants, employees and attorneys from expending or disbursing any proceeds received in

connection with the State Court Action as described in the Complaint, out of settlement with a

6645-1

third party;

B. Enjoining Defendants, their officers, agents, servants, employees and attorneys, from violating the terms of the Fund's Plan ("Plan") and the Employee Retirement Income Security Act of 1974 ("ERISA");

C. Creating an equitable constructive trust on proceeds received in connection with the State or Federal Court Action as described in the Complaint, out of any recovery, whether by settlement with, or receipt of a court award against a third party;

D. Declaring the right of the Fund to equitable restitution under to terms of the Plan and ERISA; and

E. Granting such other and further relief as the Court may deem just under the circumstances; and it is further

ORDERED that the posting of a bond in support of the Temporary Restraining Order and Preliminary Injunction requested pursuant to Fed. R. Civ. P. 65, given the assertions made in the May 12, 2008, Affidavit of Annmarie Peart, the Complaint, and the Memorandum of Law in Support of the Motion for a Preliminary Injunction is waived for good cause shown; and it is

ORDERED, that this Order and all supporting papers be served upon Defendants by overnight mail on or before the _14th_ day of May, 2008, and that the same shall be considered good and sufficient service hereof;

ORDERED, that Defendants' papers in opposition to the Motion for Preliminary Injunction be filed with the Clerk of the Court at 500 Pearl Street, New York, NY, and served by facsimile upon Plaintiff's attorney, Suzanne A. Metzger (facsimile number 646-473-6049), no later than 5:00 p.m. on the _21st_ day of _May_, 2008;

ORDERED, that Plaintiff's reply, if any, be filed in Clerk of the Court at 500 Pearl

Street, New York, NY, and served by facsimile upon Defendants' attorneys no later than 5:00

p.m. on the 23rd day of ___May___, 2008; and it is further

ORDERED, that pending hearing and determination of Plaintiff's motion for a

preliminary injunction, Defendants, their agents, servants, employees and attorneys are

temporarily enjoined from disbursing any proceeds received in connection with the State Court

Action (*Merilan v. The New York Methodist Hospital et. al.*, Index No. 12357/2004, Kings

County Supreme Court) out of any recovery or settlement against a third party or otherwise

violating the terms of the Fund's Plan and the Employee Retirement Income Security Act of

1974 ("ERISA").


IT IS SO ORDERED.


_Deborah A. Batts_
Part I
United States District Judge


Dated: __May 14__, 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
TRUSTEES OF THE 1199SEIU
NATIONAL BENEFIT FUND FOR
HELATH AND HUMAN SERVICE
EMPLOYEES,

                       Plaintiff,

         -against-

JEAN LEOPOLD MERILAN, Administrator
Of the ESTATE of MARIE S. DORLUSACA,
and ALAN CHORNE, ESQ.

                  Defendants.
-----------------------------------------------------------x

    __ CV _____ (   )

## MEMORANDUM OF LAW IN SUPPORT
## OF PLAINTIFF'S REQUEST FOR TEMPORARY RESTRAINING ORDER AND
## MOTION FOR PRELIMINARY INJUNCTION

### Preliminary Statement

Plaintiff, Trustees of the 1199SEIU National Benefit Fund for Health and Human Service

Employees (the "Fund" or "Plaintiff"), submits this memorandum of law and accompanying

Affidavit of AnnMarie Peart, sworn to on May 12, 2008 ("Peart Aff."), in support of its motion

to enjoin Defendants from violating the terms of the Fund's Plan ("Plan") and the Employee

Retirement Income Security Act of 1974 ("ERISA") and thereby depriving Plaintiffs of any

meaningful remedy.

Defendant Jean Leopold Merilan, on behalf of the estate of Marie S. Dorlusca ("Ms.

Dorlusca"), a former participant in the Fund, retained Defendant Alan Chorne, Esq. to represent

the estate in a tort action or lawsuit against a third party in the Kings County Supreme Court

(*Merilan v. The New York Methodist Hospital et. al.*, Index No. 12357/2004), arising out of

6641-1

injuries to Ms. Dorlusca incurred in 2003 as a result of medical malpractice (the "Malpractice"). The underlying state court action settled in February of 2008. Defendant Chorne has refused to provide the Fund with any details concerning the settlement.

In connection with the injuries suffered by Ms. Dorlusca as a result of the Malpractice, the Fund paid hospital, medical, laboratory and and/or x-ray benefits on behalf of Ms. Dorlusca in the amount of $141,646.05. Pursuant to the Fund's Summary Plan Description, should Defendants recover in said action, the Fund has an equitable lien and right to equitable restitution of the medical benefits payments it advanced on behalf of Ms. Dorlusca. Defendants have thus far refused to acknowledge the Fund's lien. Plaintiff brings this action to enforce the terms of the Fund's Plan of benefits and for equitable relief arising under ERISA.

Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), and *MidAtlantic Services v. Sereboff*, 547 U.S. 356, 126 S. Ct. 1869 (2006), Plaintiff is requesting from the Court relief, including, but not limited to, a temporary restraining order and a preliminary injunction ordering Defendants to hold proceeds from the underlying case in trust, up to the amount of $141,646.05 in trust, until this Court rules on the merits of the instant Complaint. In the alternative, if Defendant Chorne has already received and disbursed the funds, Plaintiff is requesting from the Court relief, including, but not limited to, a temporary restraining order and a preliminary injunction ordering Defendant Merilan to retain and set aside up to $141,646.05 of the recovery in a separate account until this Court rules on the merits of the instant Complaint. Plaintiff also seeks a declaration of its right to an equitable lien under ERISA and the terms of the Plan. Finally, Plaintiff seeks an order of constructive trust and equitable restitution or such other remedy as may be necessary to enforce ERISA and the terms of the Plan. In light of ERISA and

6641-1

established Supreme Court precedent, Plaintiff is entitled to this type of relief.

Pursuant to Fed. R. Civ. P. 65, Plaintiff is entitled to a temporary restraining order and a preliminary injunction enjoining Defendants, and all those acting in concert or participating with them, from continuing to violate the terms of the Plan and from doing so in the future, including disposing, releasing or disbursing of any amounts received in relation to a settlement, judgment or lawsuit concerning the Malpractice. Pursuant to established ERISA case law and the terms of the Fund's Plan, Plaintiff is entitled to the creation of an equitable constructive trust.

## Relevant Facts and Procedural History

Plaintiff, Trustees for 1199SEIU National Benefit Fund for Health and Human Service Employees (the "Fund") are fiduciaries of the Fund, a multi-employer trust fund established in accordance with Section 186(c) of the Labor Management Relations Act of 1947, an "employee welfare benefit plan" as that term is defined in ERISA and a Voluntary Employee Beneficiary Association, as that term is defined in Section 501(c)(9) of the Internal Revenue Code. The Fund is not an insurance company and is not subject to New York State Insurance law; it is a trust fund and self-funded employee welfare plan governed by ERISA that provides eligible participants health and related benefit coverage, such as hospitalization, medical and prescription drug coverage. (Peart Aff. ¶ 3).

The Fund is an employee welfare benefit plan and a multi-employer plan. It is a nonprofit tax-exempt organization administered by a joint Board of Trustees made up of an equal number of union and employer appointed trustees. (Peart Aff. ¶ 4). The Fund provides coverage in accordance with a written Summary Plan Description ("SPD" or "Plan"). The policy choices of

the Fund are set forth, pursuant to ERISA's notice and disclosure requirements, in laymen's terms, in the SPD, which is distributed to all participants upon enrollment in the Fund. (Peart Aff. ¶ 5).

As a multi-employer trust, the Fund is entirely financed with contributions from contributing employers pursuant to various collective bargaining agreements between 1199SEIU United Health Care Workers East ("the Union") members and healthcare employers. (Peart Aff. ¶ 6). The Union is a labor union representing hundreds of thousands of health care workers throughout the northeast. (Peart Aff. ¶ 7).

Upon information and belief, Marie S. Dorlusca ("Ms. Dorlusca") was injured due to the Malpractice sometime between February 12, 2003 and October 24, 2003. (Peart Aff. ¶ 8). Ms. Dorlusca was a participant under the terms of the Fund's Plan and Summary Plan Description in effect at the time of the Malpractice. (Peart Aff. ¶ 9). In connection with the injuries suffered by Ms. Dorlusca as a result of the Malpractice, the Fund paid hospital, medical, laboratory and and/or x-ray benefits on behalf of Ms. Dorlusca in the amount of $141,646.05. (Peart Aff. ¶ 10).

Defendant Jean Leopold Merilan ("Defendant Merilan"), on behalf of the estate of Ms. Dorlusca, a former participant in the Fund, retained Defendant Alan R. Chorne, Esq. ("Mr. Chorne" or "Defendant Chorne") to initiate a lawsuit or action in Supreme Court of the State of New York, Kings County, on behalf of the estate of Ms. Dorlusca behalf against third parties involved in or in some way connected to the Malpractice, arising out of injuries to Ms. Dorlusca caused by the Malpractice, *Merilan v. The New York Methodist Hospital et. al.*, Index No. 12357/2004, arising out of injuries to Ms. Dorlusca from the Malpractice. (See summons,

4

complaint, and affidavit of merit for Index No. 12357/2004 attached hereto as Exhibit "A").
(Peart Aff. ¶ 11).

The underlying state court action was settled sometime in February of 2008. (Peart Aff. ¶ 12). Under the terms of the Plan, the Fund is entitled to a portion of the recovery; up to $141,646.05 it paid in connection with the Malpractice. The Plan during the relevant period contained a reimbursement and right of recovery provision, which states in relevant part:

> If someone else is responsible for your illness or injury, for example, because of a Malpractice, you may be able to recover money from that person, their insurance company, an uninsured motorist fund, or no-fault insurance carrier. Expenses, such as disability, hospital, medical, prescription drugs or other services, resulting from such an illness or injury caused by the conduct of a third party, are not covered by this Plan.
>
> However, the Plan Administrator recognizes that often the responsibility for injuries or illness is disputed. Therefore, in certain cases, as a service to you and if you follow the required procedures, the Fund may advance benefit payments to you, or on your behalf, before the dispute is resolved.
>
> When another party is responsible for an illness or injury, the Plan Administrator has rights to recover the full amount it has paid or will pay related to any claims, which you may have against any person or entity. This means you are assigning your rights in any recovery to the Fund to the extent of the Fund's payments on your behalf. The Fund's right to recover comes before you can recover…[T]he Fund has an equitable lien on the proceeds of any verdict or settlement reached in a lawsuit that you bring against someone for causing an illness or injury, when the Fund has paid for costs arising from that person's actions. The Fund has a right to be repaid from those proceeds…The Fund has these rights without regard to whether you have been "made-whole."
> …
> By accepting the Fund's payments, you are consenting to a constructive trust being placed on the amount owed to the Fund out of any proceeds.

SPD, Section I.G, 2003 (attached to Peart Aff. as Exhibit "B").

Pursuant to the Fund's Plan, should Defendants recover in said action, the Fund has an equitable lien and right to equitable restitution of the healthcare benefits payments it advanced on behalf of Ms. Dorlusca. Defendants have thus far refused to acknowledge the Fund's right to its lien, or provide the Fund with the information necessary to enforce its rights as required by the Plan, or even acknowledge or respond to the Fund. (Peart Aff. ¶ 15).

The SPD for the Fund states that though expenses incurred by a participant as a result of a third party are not covered benefits, the Fund's payments of those expenses while a dispute is pending are only advances that must be returned to the Fund and states further that the Fund must be reimbursed from any proceeds of any verdict or settlement reached in a lawsuit that is brought by the participant against someone for causing an illness or injury, when the Fund has paid for costs arising from that person's actions (see Exhibit "B" attached to Peart Aff.).

The Fund was first made aware of a possible lawsuit or action against a third party on behalf of the estate of Ms. Dorlusca on or about December 21, 2007, when the Fund received a request for information from Mr. Chorne in connection with the Malpractice lawsuit. (Peart Aff. ¶ 17). On January 7, 2008, Ms. Peart's assistant, Tamara Duclosel spoke with Mr. Chorne, and he advised her that he did not intend to honor the Fund's lien, as the Malpractice lawsuit was for wrongful death and he was not seeking medical expenses. Mr. Chorne refused to disclose to the Fund the nature of the lawsuit, i.e. the injuries subject to the lawsuit in so far as they relate to the Fund's benefit payments, so that the Fund could assess its lien accordingly. (Peart Aff. ¶ 22).

On January 9, 2008, Ms. Peart sent Defendant Chorne a notice of the Fund's assertion of a lien, together with an itemization of benefits paid that it believed were subject to the lien

(attached to Peart Aff. as Exhibit "C").  No one from Defendant Chorne's office responded. (Peart Aff. ¶ 18).

On February 26, 2008, Ms. Peart called Defendant Chorne, and left a message, but Mr. Chorne did not return her call. (Peart Aff. ¶ 19).  On March 17, 2008, Ms. Peart again phoned Mr. Chorne, and the receptionist/answering service told her he was not available; Ms. Peart was forwarded to his voicemail and she again left a message.  He did not return her call. (Peart Aff. ¶ 20).  On April 7, 2008, Ms. Peart again phoned Mr. Chorne and the receptionist/answering service told her he was not available; she forwarded her to his voicemail and she again left a message.  No one returned her call. (Peart Aff. ¶ 21).

On April 24, 2008, the Fund obtained from the Kings County Supreme Court a copy of the Malpractice lawsuit's summons and complaint.  The Malpractice complaint alleges that damages for personal injuries and medical malpractice.  The complaint only alleges damages on behalf of others insofar as Defendant Merilan "became responsible for the expenses of decedent's funeral and decedent's medical treatment and expenses…" (See Exhibit "A" attached to Peart Aff.)

On April 28, 2008, Suzanne Metzger, Associate Counsel for the Fund, wrote a letter to Defendant Chorne via overnight delivery explaining the Fund's right to assert a lien, including statutory references, relevant portions of the SPD, and case citations (attached to Peart Aff. as Exhibit "D"). (Peart Aff. ¶ 24).  On May 7, 2008, Mr. Chorne left a message with Suzanne Metzger that he intended to argue before the Surrogate's Court that the Fund was not entitled to its lien, and demanded that "her people stop calling him." (Peart Aff. ¶ 25).

6641-1

On May 8, 2008, Ms. Peart called Mr. Chorne to ask him to provide the Fund with the Bill of Particulars and the amount of the settlement so that the Fund could assess its lien accordingly, as required by the Plan, and he responded "I'm not telling you anything," and notified her that he would be "filing papers [against] the lien." (Peart Aff. ¶ 26).

Thereafter, the Fund initiated the instant action. Unless relief is granted, Defendants may receive and disburse the proceeds of a recovery from the settlement concerning Malpractice suit on behalf of Ms. Dorlusca in violation of the terms of the Plan before a final determination of the Fund's right to reimbursement is made by this Court.

## ARGUMENT

### POINT I

### PLAINTIFF'S REQUEST FOR A PRELIMINARY INJUNCTION SHOULD BE GRANTED

Plaintiff's request for a preliminary injunction and temporary restraining order should be granted. In order to obtain a preliminary injunction, three factors must be met. A party seeking an injunction must show that: (1) it will be subject to and suffer irreparable injury if the injunction is not granted; and (2) either (a) that it will likely succeed on the merits or (b) that there are sufficiently serious questions going to the merits of the case to make them a fair ground for litigation, and (3) that a balancing of the hardships tips "decidedly" in favor of the moving party. *See Lynch v. New York City Dist. Council of Carpenters*, 99 Civ. 0671 (DLC), 1999 U.S. Dist. LEXIS 3934, at *6 (S.D.N.Y. Mar. 30, 1999) (citing *Genesee Brewing Co. v. Stroh Brewing Co.*, 124 F.3d 137, 142 (2d Cir. 1997) (citation omitted)).

ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), provides that a civil action may be brought by a fiduciary to (A) enjoin any act or practice which violates any portion of ERISA or the Fund's "plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of" ERISA.  Under fact patterns nearly identical to the instant case, courts have granted relief in the form of temporary restraining orders and preliminary injunctions requiring the defendants to retain and set aside, in a separate account, a portion of the proceeds equal to the amount of the lien, until the court ruled on the merits of the case and all appeals were exhausted. *MidAtlantic Services v. Sereboff*, 303 F.Supp. 2d 691 (Md. 2004), *aff'd* 407 F.3d 212 (4th Cir. 2005), *affirmed in relevant part,* 547 U.S. 356, 126 S. Ct. 1869 (2006); *see also Wellmark v. Deguara*, 257 F. Supp. 2d 1209, 1211 (S.D. Iowa 2003)(preliminary injunction granted to prevent recoveries from third parties from being dissipated while federal law suits between ERISA plans and their beneficiaries proceed).

In *Mid Atlantic Medical Services, LLC v. Sereboff*, the United States Supreme Court ruled that an ERISA plan may enforce an "equitable lien on particular funds in the defendant's possession," as an ERISA § 502(a)(3) claim. 547 U.S. 356, 126 S. Ct. 1869 (2006), *citing Great-West v. Knudson* 534 U.S. 204 (2002).  The equitable lien attaches even before the funds come into existence; it attaches at the moment the participant accepts the advanced benefit payments. *Id*. at 1875-1876.  However, an ERISA plan may not seek personal liability damages against a defendant's assets generally. *Id.* at 1874.  Unless relief is granted, Defendant Chorne may receive and disburse the proceeds of the recovery from the settlement concerning Ms. Dorlusca's Malpractice to Defendant Merilan on behalf of Ms. Dorlusca's estate, and Defendant Merilan may dispense of or distribute the proceeds, in violation of the terms of the Plan before a final

determination of the Fund's right to reimbursement is made by this Court.

Therefore, this Court should grant Plaintiff's motion for a preliminary injunction and temporary restraining order preventing either Defendant from disbursing the proceeds of the underlying settlement.

**(a)      Irreparable Harm**

If Plaintiff's request for a preliminary injunction is not granted and the identifiable proceeds in Defendant Chorne's possession are dissipated or disbursed to Defendant Merilan, the Fund will no longer be able to satisfy the requirements under *Great-West v. Knudson* and *Mid Atlantic Medical Services, LLC v. Sereboff* because the money or property may not be retained in either Defendant's possession. *See Great-West Life & Annuity Ins. Co.*, 534 U.S. at 213-14, *and Mid Atlantic Medical Services, LLC*, 407 F.3d 212.

"The purpose of a preliminary injunction is to maintain the status quo by preserving the viability of Plaintiff's equitable right of recovery until a trial on the merits can finally resolve the dispute." *Mank v. Green*, 297 F. Supp. 2d 297, 304 (D. Me. 2003). In this case, such preliminary injunctive relief is necessary to preserve Plaintiff's equitable remedy against Defendants and without it, that equitable right will be irretrievably lost to Plaintiff. *See id.*

Absent intervention by the Court, Plaintiff will suffer immediate and irreparable harm. If Defendants are able to place beyond the reach of this Court any recovery from Defendant Merilan's settlement on behalf of Ms. Dorlusca, then Defendants may deprive the Court of the ability to impose any remedy in favor of the Fund.

Defendants have demonstrated a likelihood of circumventing such judgment, of violating the term of the Plan and the Fund's rights under ERISA. In the only communications with

10

Defendant Chorne, he stated that the Fund had no right to a lien, because 1) he was not seeking

reimbursement for medical expenses, and because 2) the action was for wrongful death on the

part of Ms. Dorlusca's family only.  Defendant Chorne's first defense is irrelevant (See Point

I(c), *supra*), and his second defense is belied by the Malpractice complaint he filed in state court.

 Since then, Defendant Chorne failed to respond to repeated communications from the Fund, both

by letter and by telephone.  The Fund has, more than once, attempted to apprise Defendant

Chorne of the legal precedent governing the instant situation, yet he has chosen to dismiss and

ignore the Fund.

The Fund does not seek to impose personal liability upon Defendants; rather, it has

asserted its right to an equitable lien against any judgment or settlement proceeds obtained by

Defendants.  In 2002, when the Supreme Court issued the landmark *Great-West v. Knudson*

ruling on the meaning of "equitable remedies," the court allowed for equitable restitution in the

form of a constructive trust or equitable lien; the ruling that such a remedy was unavailable to

Great-West was based on the unique facts that the funds were never in the Defendant's

possession or constructive possession. 534 U.S. 204, at 213.  Since then, there have been

numerous Federal Court cases in which the Courts recognized a Plan's equitable lien against

monies that were identifiable and traceable to monies from a settlement or judgment in an

underlying tort action, and were not yet disbursed to the participant,[1] most recently upheld by the

---

1 *See Admin. Comm. of the Wal-Mart Assocs. Health & Welfare Plan v. Willard*, 393 F.3d 1119, 1122 (10th Cir. 2004); *Bombardier Aerospace Employee Welfare Benefits Plan v. Ferrer, Poirot & Wansbrough*, 354 F.3d 348 (5th Cir. 2003); *Admin. Comm. of the Wal-Mart Stores, Inc. v. Varco*, 338 F.3d 680 (7th Cir. 2003) (settlement monies placed in constructive trust for employee welfare benefit fund that advanced payment for medical expenses on behalf of participant); *B.P. AMOCO Corp. v. Connell*, 320 F. Supp. 2d 1368 (M.D. Ga. 2004) (same); *IBEW-NECA Southwestern Health and Benefit Fun v. Gurule*, 337 F. Supp. 2d 845 (N.D. Tex. 2004) (same); *Mank v. Green*, 323 F. Supp. 2d 115 (D. Me. 2004)(court imposed a constructive trust against the participant based on the plan's express language providing for a right of recovery with respect to any third-party recovery); *Am. Med. Sec. Group v. Meyers*,

Supreme Court in the *Mid-Atlantic* case. Also, the Fund provided Chorne with a recent United States District Court decision, on similar facts, ruling that the Surrogate's Court had no jurisdiction to deny enforcement of the Fund's lien (attached to Peart Aff. in Exhibit "D"). Yet, Defendant Chorne's office has inexplicably refused to recognize the Fund's ERISA lien.

Defendant Chorne has continued to ignore the Fund's lien and the law. In 2005, the Fourth Circuit, reflecting the majority view of the circuit courts that had addressed this issue, held that an ERISA plan fiduciary may enforce its right to an equitable lien against a beneficiary's recovery, under ERISA § 503(a)(3), to recover funds that belong in good conscience to the fiduciary, and are within the control or constructive possession of the beneficiary. *Mid Atlantic Medical Services, LLC v. Sereboff*, 407 F.3d 212 (4th Cir. 2005), *affirmed in relevant part,* No. 05-260, 2006 U.S. LEXIS 3954 (May 15, 2006). Most recently, the Supreme Court issued a ruling upholding the *Sereboff* decision, and further clarifying that in the context of an equitable lien by agreement, the "fund over which a lien is asserted need not be in existence when the contract containing the lien provision is executed." *Mid Atlantic Medical Services, LLC v. Sereboff,* No. 05-260, 2006 U.S. LEXIS 3954 (May 15, 2006). In addition, the Court also noted that an equitable lien by assignment or agreement creates a constructive trust on the proceeds of an underlying tort recovery, and makes the beneficiary a trustee of such funds.

**(b)    Balance of the Harms and the Public Interest**

The balance of the hardships weighs heavily in favor of granting a preliminary injunction to Plaintiff. Ms. Dorlusca accepted $141,646.05 from the Fund to pay for her medical and healthcare expenses, and under the terms of the Plan, she or her representative is required to

---

329 F. Supp. 2d 1039 (S.D. Iowa 2004)(same)*Great-West Life & Annuity Ins. Co. v. Brown*, 192 F. Supp. 2d 1376,

restore that money to the Fund. (See Exhibit "B" attached to Peart Aff.). Defendants have

recovered damages in a settlement related to the Malpractice. Defendants will not be harmed by

the Court's "granting the preliminary injunction because granting Plaintiff's request for relief will

merely maintain the status quo until a final determination can be made in this matter." *Mank v.

Green*, 297 F. Supp. 2d at 305. Conversely, if this request is not granted, Defendants will be able

to deplete funds that belong to the Fund, and Plaintiff has made a showing of likely recovery on

its equitable claims to a portion of the funds. *See id.* Accordingly, injunctive relief is necessary

and appropriate.

**(c)    Likelihood of Success on the Merits**

There is a great likelihood that should the instant matter go to trial, Plaintiff will be

successful on the merits. As set forth in Point I(a) *infra*, the Supreme Court has recognized an

ERISA plan's right to an equitable lien against a beneficiary's tort recovery, where that plan has

advanced medical expenses paid on that beneficiary's behalf in connection with an act or

omission of a third party, and where the terms of the plan require the beneficiary to reimburse the

plan for those benefits from all recoveries from that party. *MidAtlantic Services v. Sereboff*, 547

U.S. 356, 126 S. Ct. 1869 (2006)[2]. The particular funds subject to the equitable lien need not be

in existence for the lien to attach; it attaches at the moment the participant accepts the advanced

benefit payments. *Id.* at 1875-1876.

In addition, an ERISA plan's right to a lien is not limited to funds specifically identified as

---

1381 (M.D. Ga. 2002) (same).

2 *See also Egelhoff v. Egelhoff*, 532 U.S. 141, 151 n.4 (2001)(Fund must be administered in accordance with the terms of the Plan, even where those terms are inconsistent with state law); *FMC Corp. v. Holliday*, 498 U.S. 52 (1990)(Pennsylvania anti-subrogation law was preempted by ERISA and could not be applied to employee benefit plans); 29 U.S.C. §1144(b)(2)(B)(Where medical benefits were provided under a self-funded health plan, the plan

compensation for prior medical expenses on behalf of a participant, and is not limited to funds remaining after the participant has been "made-whole." The Fund's SPD specifically allows the **right of first reimbursement** out of any recovery. In other words, the "make-whole" doctrine does not apply to ERISA plans seeking restitution of benefit payments from third-party recoveries, particularly where the plan unambiguously disavows make-whole principles (as in the Fund's plan). *Id., See Moore v. CapitalCare, Inc.*, 461 F.3d 1 (D.C. Cir. 2006); *Beveridge v. Benefit Recovery Inc., et. al.*, 2006 U.S. Dist. LEXIS 50942 (D. Ariz. 2006). The *Sereboff* case makes it explicit that the Fund need not "trace" funds assigned to medical expenses into the hands of the participant's representative, as **this is not merely a subrogation claim.**" *Sereboff v. Mid Atlantic Medical Services; see also e.g., Dillard's Inc. v. Liberty Life Assur. Co.*, 456 F.3d 894 (8th Cir. 2006); *Popowski v. Parrott*, 461 F.3d 1367 (11th Cir. 2006); *Unum Life Ins. Co. of Am. v. Lynch*, No. 04-cv-9007, 2006 U.S. Dist. LEXIS 7160 (SDNY Jan. 31, 2006 ); *McIntyre v. Carpenters Health and Security Trust of Western Washington*, No. C05-5724FDB, 2006 U.S. Dist. LEXIS 3759 (W.D. Wash., Jan. 13, 2006). Thus, regardless of whether Mr. Chorne introduces medical bills at trial or negotiation, and regardless of whether he characterize the settlement as "pain and suffering" on the part of the deceased, the Fund's lien attached to his clients' recoveries.

Once Plaintiff has shown its Plan contains reimbursement provisions that established plan-based rights to enforce reimbursement claims against participants, the Court will grant the relief that ERISA expressly provides for under Section 502(a)(3) to prevent violation of terms of the Fund's plan. The SPD has clear and unambiguous reimbursement provisions, including a

---

was not deemed to be insurance for purposes of ERISA's insurance savings clause and thus not bound by insurance

provision allowing the Fund reimbursement from recoveries from third parties, such as settlement proceeds. (See Exhibit "B" attached to Peart Aff.). The settlement funds from the underlying tort action shall be submitted to, or are presently in, the control of either Defendant Chorne or Defendant Merilan, and are identifiable. Moreover, the aforementioned SPD provisions entitle the Fund to the imposition of a constructive trust.

Therefore, it is likely that Plaintiff will succeed on the merits. In light of the foregoing, Plaintiff's request for a preliminary injunction and temporary restraining order should be granted.


## POINT II

### THIS COURT SHOULD DECLARE OF THE FUND'S RIGHTS UNDER THE TERMS OF THE PLAN

This Court should grant Plaintiff's request for a declaration of rights under the terms of the Plan. Plaintiff contends that it has a right to a lien against the proceeds of the third-party tortfeasor action related to the Malpractice, up to the amount of benefits Plaintiff advanced Ms. Dorlusca to redress the injuries that occurred as a result of the alleged Malpractice. Defendant Chorne has refused to honor the lien and has apparently instructed his client, Defendant Merilan, not to comply with the terms of the Plan. Pursuant to 28 U.S.C. § 2201, this Court should interpret and enforce the terms of the Plan by declaring the Fund's right to have its lien enforced under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3). *Liberty Life Assurance Co. v. Toys "R" Us*, 901 F. Supp. 556 (E.D.N.Y. 1995).

---

law).

6641-1

## POINT III

## THIS COURT SHOULD DIRECT THE CREATION OF AN EQUITABLE CONSTRUCTIVE TRUST

This Court should grant Plaintiff's request for the imposition of an equitable constructive

trust. The United States Supreme Court has recognized that ERISA plans can obtain a

constructive trust under ERISA § 502(a)(3). *MidAtlantic Services v. Sereboff*, 547 U.S. 356, 126

S. Ct. 1869 (2006); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 213 (2002) (a

plaintiff fund can seek "restitution, in equity, ordinarily in the form of a constructive trust or an

equitable lien, where money or property identified as belonging in good conscience to the

plaintiff [fund] could clearly be traced to particular funds or property in the defendant's

[participant's] possession."). Furthermore, the Supreme Court has noted that an equitable lien by

assignment or agreement creates a constructive trust on the proceeds of an underlying tort

recovery, and makes the beneficiary a trustee of such funds. The aforementioned SPD provisions,

and the benefits advanced by the Fund, have created a constructive trust which should be

enforced by the Court. *Id., citing Barnes v. Alex*ander, 232 U.S. 117 (1914). Plaintiff has

identified money belonging to the Fund that can clearly be traced to particular funds at issue in

Defendants' underlying third-party tortfeasor settlement. *Id., see also Admin. Comm. of the Wal-*

*Mart Stores, Inc. v. Varco*, 338 F.3d 680 (7th Cir. 2003) (settlement monies placed in

constructive trust for employee welfare benefit fund that advanced payment for medical expenses

on behalf of participant).

In light of the above, the Court should grant Plaintiff's request for the imposition of an

equitable constructive trust. Unless relief is granted, Defendants may receive and disburse the

6641-1

proceeds of a recovery from the settlement concerning the estate of Ms. Dorlusca's Malpractice lawsuit in violation of the terms of the Plan before a final determination of the Fund's right to reimbursement is made by this Court. Defendants will continue to violate the Plan's terms unless this Court intervenes. Plaintiff has no adequate remedy at law. Absent intervention by the Court, Plaintiff will suffer immediate and irreparable harm. If Defendants are able to place any recovery from the lawsuit, judgment or settlement beyond the reach of this Court, then Defendants may deprive the Court of the ability to impose any remedy in favor of the Fund.

The Plaintiff is likely to succeed in its claim that the Fund must be reimbursed for the amounts it has paid attributable to the Malpractice out of the proceeds of any recovery in the lawsuit, judgment or settlement. At minimum, the balance of hardships tips decidedly toward Plaintiff, because the Plaintiff has already advanced over forty thousand dollars in benefits, for which it has a right to reimbursement. The grant of the requested relief will not result in irreparable harm to the Defendants. No prior application has been made for the relief requested herein.

Therefore, this Court should grant Plaintiff's request for a declaration of rights and the imposition of an equitable constructive trust.

## CONCLUSION

WHEREFORE, for the reasons set forth above, and stated in the accompanying Affidavit, Plaintiff respectfully requests that its request for a preliminary injunction, temporary restraining order, declaration of rights, and the creation of an equitable constructive trust and other equitable remedies be granted in their entirety.

Dated: New York, New York
       May 12, 2008

Respectfully Submitted,

1199SEIU National Benefit Fund

By: _Suzanne A Metzger_
Suzanne A. Metzger (SM7894)
Associate Counsel
Legal Department
330 West 42nd Street, 31st Floor
New York, NY  10036
p. (646) 473-6041
f. (646) 473-6049

Attorney for Plaintiff

18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
TRUSTEES OF THE 1199SEIU
NATIONAL BENEFIT FUND FOR
HEALTH AND HUMAN SERVICE
EMPLOYEES,

                Plaintiff,

        -against-

JEAN MERILAN, Administrator of
the ESTATE of MARIE S. DORLUSACA,
and ALAN CHORNE, ESQ.

                Defendants.
------------------------------------------------------------x

___ CV _____ (   )

**AFFIDAVIT OF
ANNMARIE PEART**

ANNMARIE PEART, deposes and affirms that the following statements are true, and those made upon information and belief she believes to be true, under penalties of perjury:

    1.      I am the Manager of the Third-Party Liens Department for Plaintiff 1199SEIU National Benefit Fund (the "Fund").

    2.      I am fully familiar with the pleadings in this matter, and make this affirmation in support of Plaintiff's temporary restraining order, motion for preliminary injunction and request for the creation of a constructive trust.

    3.      The Fund is a multi-employer trust fund established in accordance with Section 186(c) of the Labor Management Relations Act of 1947, an "employee welfare benefit plan" as that term is defined in ERISA and a Voluntary Employee Beneficiary Association, as that term is defined in Section 501(c)(9) of the Internal Revenue Code.  The Fund is not an insurance company and is not subject to New York State Insurance law; it is a trust fund and self-funded employee welfare plan governed by ERISA that provides eligible participants health and related benefit coverage, such as hospitalization, medical and prescription drug coverage.

6633-1

4.    The Fund is an employee welfare benefit plan and a multi-employer plan. It is a nonprofit tax-exempt organization administered by a joint Board of Trustees made up of an equal number of union and employer appointed trustees.

5.    The Fund provides coverage in accordance with a written Summary Plan Description ("SPD" or "Plan"). The policy choices of the Fund are set forth, pursuant to ERISA's notice and disclosure requirements, in laymen's terms, in the SPD, which is distributed to all participants upon enrollment in the Fund.

6.    As a multi-employer trust, the Fund is entirely financed with contributions from contributing employers pursuant to various collective bargaining agreements between 1199SEIU United Health Care Workers East ("the Union") members and healthcare employers.

7.    The Union is a labor union representing hundreds of thousands of health care workers throughout the northeast.

8.    Upon information and belief, Marie S. Dorlusca ("Ms. Dorlusca") was injured due to alleged medical malpractice sometime between February 12, 2003 and October 24, 2003 (the "Malpractice").

9.    Ms. Dorlusca was a participant under the terms of the Fund's Plan and Summary Plan Description in effect at the time of the Malpractice.

10.    In connection with the injuries suffered by Ms. Dorlusca as a result of the Malpractice, the Fund paid hospital, medical, laboratory and and/or x-ray benefits on behalf of Ms. Dorlusca in the amount of $141,646.05.

11.    Defendant Jean Merilan, on behalf of the estate of Ms. Dorlusca, a former participant in the Fund, retained Defendant Alan R. Chorne, Esq. ("Mr. Chorne" or "Defendant Chorne") to initiate a lawsuit or action in Supreme Court of the State of New York, Kings

County, on behalf of the estate of Ms. Dorlusca against third parties involved in or in some way connected to the Malpractice, arising out of injuries to Ms. Dorlusca caused by the Malpractice, *Merilan v. The New York Methodist Hospital et. al.*, Index No. 12357/2004. (See summons, complaint, and affidavit of merit for Index No. 12357/2004 attached hereto as Exhibit "A").

    12.    The underlying state court action was settled sometime in February of 2008.

    13.    Under the terms of the Plan, the Fund is entitled to equitable restitution of the $141,646.05 it paid in connection with the Malpractice.

    14.    The Plan during the relevant period contained a reimbursement and right of recovery provision, which states in relevant part:

> If someone else is responsible for your illness or injury, for example, because of an accident, you may be able to recover money from that person, their insurance company, an uninsured motorist fund, or no-fault insurance carrier. Expenses, such as disability, hospital, medical, prescription drugs or other services, resulting from such an illness or injury caused by the conduct of a third party, are not covered by this Plan.
>
> However, the Plan Administrator recognizes that often the responsibility for injuries or illness is disputed. Therefore, in certain cases, as a service to you and if you follow the required procedures, the Fund may advance benefit payments to you, or on your behalf, before the dispute is resolved.
>
> When another party is responsible for an illness or injury, the Plan Administrator has rights to recover the full amount it has paid or will pay related to any claims, which you may have against any person or entity. This means you are assigning your rights in any recovery to the Fund to the extent of the Fund's payments on your behalf. The Fund's right to recover comes before you can recover…[T]he Fund has an equitable lien on the proceeds of any verdict or settlement reached in a lawsuit that you bring against someone for causing an illness or injury, when the Fund has paid for costs arising from that person's actions. The Fund has a right to be repaid from those proceeds…The Fund has these rights without regard to whether you have been "made-whole."
>
> …

By accepting the Fund's payments, you are consenting to a constructive trust being placed on the amount owed to the Fund out of any proceeds.

SPD, Section I.G, 2003 (attached hereto as Exhibit "B").

15.    Pursuant to the Fund's Plan, should Defendants recover in said action, the Fund has an equitable lien and right to equitable restitution of the healthcare benefits payments it advanced on behalf of Ms. Dorlusca. Defendants have thus far refused to acknowledge the Fund's right to its lien, or provide the Fund with the information necessary to enforce its rights as required by the Plan, or even acknowledge or respond to the Fund.

16.    The SPD for the Fund states that though expenses incurred by a participant as a result of a third party are not covered benefits, the Fund's payments of those expenses while a dispute is pending are only advances that must be returned to the Fund and states further that the Fund must be reimbursed from any proceeds of any verdict or settlement reached in a lawsuit that is brought by the participant against someone for causing an illness or injury, when the Fund has paid for costs arising from that person's actions (see Exhibit "B" attached hereto).

17.    The Fund was first made aware of a possible lawsuit or action against a third party on behalf of the estate of Ms. Dorlusca on or about December 21, 2007, when the Fund received a request for information from Mr. Chorne in connection with the Malpractice lawsuit.

18.    On January 9, 2008, I sent Defendant Chorne a notice of the Fund's assertion of a lien, together with an itemization of benefits paid that it believed were subject to the lien (attached hereto as Exhibit "C"). No one from Defendant Chorne's office responded.

19.    On February 26, 2008, I called Defendant Chorne, and left a message asking him to return my call. Mr. Chorne did not return my call.

20.     On March 17, 2008, I again phoned Mr. Chorne, and the receptionist/answering service told me he was not available; she forwarded me to his voicemail and I again left a message.  He did not return my call.

21.     On April 7, 2008, I again phoned Mr. Chorne and the receptionist/answering service told me he was not available; she forwarded me to his voicemail and I again left a message.  He did not return my call.

22.     On January 7, 2008, my assistant, Tamara Duclosel spoke with Mr. Chorne, and he advised her that he did not intend to honor the Fund's lien, as the Malpractice lawsuit was for wrongful death and he was not seeking medical expenses.  Mr. Chorne refused to disclose to the Fund the nature of the lawsuit, i.e. the injuries subject to the lawsuit in so far as they relate to the Fund's benefit payments, so that the Fund could assess its lien accordingly.

23.     On April 24, 2008, the Fund obtained from the Kings County Supreme Court a copy of the Malpractice lawsuit's summons and complaint.  The Malpractice complaint alleges that damages for personal injuries and medical malpractice.  The complaint only alleges damages on behalf of others insofar as Defendant Merilan "became responsible for the expenses of decedent's funeral and decedent's medical treatment and expenses…"

24.     On April 28, 2008, Suzanne Metzger, Associate Counsel for the Fund, wrote a letter to Defendant Chorne via overnight delivery explaining the Fund's right to assert a lien, including statutory references, relevant portions of the SPD, and case citations, which she copied to me (attached hereto as Exhibit "D").

25.     On May 7, 2008, Mr. Chorne left a message with Suzanne Metzger that he intended to argue before the Surrogate's Court that the Fund was not entitled to its lien, and demanded that "her people stop calling him."

26.     On May 8, 2008, I called Mr. Chorne to ask him to provide the Fund with the Bill of Particulars and the amount of the settlement so that the Fund could assess its lien accordingly, as required by the Plan, and he responded "I'm not telling you anything," and notified me that he would be "filing court papers [against] the Fund's lien."

27.     Thereafter, the Fund initiated the instant action.

28.     Unless relief is granted, Defendants may receive and disburse the proceeds of a recovery from the settlement concerning Malpractice suit on behalf of Ms. Dorlusca in violation of the terms of the Plan before a final determination of the Fund's right to reimbursement is made by this Court.


DATED:       May 12, 2008

                                        1199SEIU National Benefit Fund

                                        By: _____

                                             Annmarie Peart
                                             Manager, Third-Party Liens Department
                                             1199SEIU National Benefit Fund
                                             330 West 42nd Street, 9th Floor
                                             New York, NY  10036
                                             p (646) 473-6707
                                             f (646) 473-6766

Sworn to before me this
12th day of May, 2007.

_____
Notary Public

SUZANNE A. METZGER
NOTARY PUBLIC, STATE OF NEW YORK
No. 02ME6180763
QUALIFIED IN NEW YORK COUNTY
MY COMMISSION EXPIRES JULY 19, 2009

6633-1                                            6



King County Clerk's Office                                                                                    Page 1 of 1

# 12357 / 2004

Opened: **4/19/2004** Type: **Tort**

**MERILAN, JEAN LEOPOLD AS ADMINISTRATOR ETC.** vs. **THE NEW YORK METHODIST HOSPITAL ETAL**

Atty: **CHORNE**    Atty:

| Filed | Actions | RecRoom |
|---|---|---|
| 3/12/2008 | MOTION COVERPAGE fee pd. ord. | 3/20/2008 |
| 12/13/2007 | Order Trial - jury selection will commence 2/25/08 etc. | 12/31/2007 |
| 11/30/2007 | Copy ord. notice entry, afft.svc. | 12/10/2007 |
| 10/29/2007 | Notice appeal/radi, copy ord, afft svc, fee paid | 10/31/2007 |
| 10/9/2007 | Decision and order the motn by Cheryl Schleber granting S/J & dismissing the complaint is denied, etc., mps, affm in opp, reply | 10/12/2007 |
| 12/26/2006 | MOTION COVERPAGE FEE PD/DEFT | 1/2/2007 |
| 10/27/2006 | Note of issue $30 u | 11/8/2006 |
| 10/27/2006 | Jury demand $65 u | 11/8/2006 |
| 7/17/2006 | Order to File Note of Issue on or before 11/15/06 etc. Case retracked to complex. | 7/18/2006 |
| 3/28/2006 | Order to File Note of Issue on/b 9/29/06, etc. | 3/29/2006 |
| 12/14/2005 | STIP SO ORDERED EXTENDING TIME TO FILE N/O/I by 3/27/06 etc... | 12/15/2005 |
| 7/22/2005 | Order to File Note of Issue on or before 1/10/06 etc. | 7/26/2005 |
| 6/9/2005 | Order defts to provide pltf with the returns of the PC ins. policy etc motps,afms,afts | 6/10/2005 |
| 3/15/2005 | MOTION COVERPAGE fee pd. deft. | 3/16/2005 |
| 3/9/2005 | MOTION COVERPAGE FEE PAID | 3/9/2005 |
| 9/13/2004 | Prelim.conference order | 9/15/2004 |
| 8/10/2004 | Motion papers | 8/10/2004 |
| 7/19/2004 | Req. judical interven. fee paid u | 7/19/2004 |
| 6/10/2004 | Affidavit of serv. | 6/17/2004 |
| 5/28/2004 | Affidavit of serv. 2 | 6/4/2004 |
| 4/30/2004 | Affidavit of serv. 2 | 5/10/2004 |
| 4/19/2004 | Summ. & compl. | 4/20/2004 |
| | **Total: 22** | |

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

Index# 12357/04

JEAN LEOPOLD MERILAN, as Administrator of the
goods, chattels and credits which were of MARIE S.
DORLUSCA, deceased,

Plaintiff,

-against-

THE NEW YORK METHODIST HOSPITAL,
CHERYL SCHLEBER, GREGORY KLIOT M.D.,
DAVID A. KLIOT, MD, P.C., KLIOT OBSTETRICS &
GYNECOLOGY, P.C., MELISSA MONTES M.D.,
LEVICA NARINE M.D., and CHAVI SHAPIRO M.D.

Defendants.

**Summons**

Plaintiff designates King's County as the place of trial.
The basis of venue is the County of plaintiff's appointment as administrator.

Plaintiff resides at 995 Eastern Parkway, County of Kings.

To the above named defendant(s):

YOU ARE HEREBY SUMMONED to answer the complaint in this action and to
serve a copy of your answer, or, if the complaint, is not served with this summons, to serve a
notice of appearance on the plaintiff's attorney within 20 days after service of this summons,
exclusive of the day of service (or 30 days after the service is complete if this summons is
not personally delivered to you within the State of New York); and in case of your failure to
appear or answer, judgment will be taken against you by default for the relief demanded in
the complaint.

Dated: April 15, 2004

JEAN R. CHORNE
Attorney for Plaintiff(s)
Office and Post Office Address:
150 Broadway
New York, NY 10038
(212) 349-9100

Defendant's address(es):

THE NEW YORK METHODIST HOSPITAL:506 Sixth Street, Brooklyn, NY
Cheryl Schleber  225 Marlborough Rd., Brooklyn, NY 11226 (718) 693-1011
Gregory Kliot 225 Marlborough Rd., Brooklyn, NY 11226 (718) 693-1011
Montes, Narine c/o NY Methodist Hospital
Shapiro: 554 Seventh Street, Brooklyn, NY     (718) 832-4566
David A Kliot MD PC c/o NYS Secretary of State
Kliot Obstetric and Gynecology  PC c/o NYS Secretary of State

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

---

JEAN LEOPOLD MERILAN, as Administrator of the
goods, chattels and credits which were of MARIE S.
DORLUSCA, deceased,

Index No.

Plaintiff,

-against-

VERIFIED COMPLAINT

THE NEW YORK METHODIST HOSPITAL, CHERYL
SCHLEBER, GREGORY KLIOT M.D., DAVID A.
KLIOT, MD, P.C., KLIOT OBSTETRICS &
GYNECOLOGY, P.C., MELISSA MONTES M.D.,
LEVICA NARINE M.D., and CHAVI SHAPIRO M.D.

Defendants.

---

Plaintiff, complaining of the defendants, by his attorney, ALAN R.

CHORNE, respectfully states and alleges, upon information and belief:

AS AND FOR A FIRST CAUSE OF ACTION

1. That prior to the commencement of this action, plaintiff, JEAN LEOPOLD
   MERILAN, was appointed Administrator of the goods, chattels and credits which
   were of MARIE S. DORLUSCA, deceased by the Surrogate of Kings County, on
   the 1st day of December, 2003.

2. That at all times hereinafter mentioned, defendant NEW YORK METHODIST
   HOSPITAL (hereinafter referred to as METHODIST), was a domestic corporation
   duly organized and existing under and by virtue of the laws of the State of New
   York.

3. That at all times hereinafter mentioned, defendant METHODIST owned, operated,
   managed and controlled a certain hospital for the treatment of the sick and ailing in
   the County of Kings, State of New York, and as such held itself out as duly qualified
   to render proper and adequate medical and surgical services to members of the

general public, including plaintiff's decedent herein.

4. That this action falls within one or more of the exceptions set forth in CPLR 1602.

5. That at all times hereinafter mentioned, defendant Cheryl Schleber was a certified nurse midwife duly licensed to practice in the State of New York, and as such held herself out as duly qualified to render proper and adequate medical services to members of the general public, including Marie S. Dorlusca.

6. That at all times hereinafter mentioned, defendant, Gregory Kliot, was a physician duly licensed to practice medicine in the State of New York and as such held himself out as duly qualified to render proper and adequate medical services to members of the general public, including Marie S. Dorlusca.

7. That at all times hereinafter mentioned, defendant, David A. Kliot, MD. P.C., was a professional corporation organized and existing under the laws of New York State.

8. That at all times hereinafter mentioned, defendant, Kliot Obstetrics and Gynecology, P.C., was a professional corporation organized and existing under the laws of New York State.

9. That at all times hereinafter mentioned, defendant, Melissa Montes, was a physician duly licensed to practice medicine in the State of New York and as such held herself out as duly qualified to render proper and adequate medical services to members of the general public, including Marie S. Dorlusca.

10. That at all times hereinafter mentioned, defendant, Chavi Shapiro, was a physician duly licensed to practice medicine in the State of New York and as such held herself out as duly qualified to render proper and adequate medical services to members of the general public, including Marie S. Dorlusca.

11. That at all times hereinafter mentioned, defendant, Levica Narine, was a physician duly licensed to practice medicine in the State of New York and as such held himself out as duly qualified to render proper and adequate medical services to members of the general public, including Marie S. Dorlusca.

12. That at all times hereinafter mentioned, defendant, Cheryl Schleber, was an employee of the defendant Gregory Kliot MD.

13. That at all times hereinafter mentioned, defendant, Cheryl Schleber, was an employee of the defendant David A. Kliot, M.D. P.C..

14. That at all times hereinafter mentioned, defendant, Cheryl Schleber, was an employee of the defendant Kliot Obstetrics & Gynecology, P.C.

15. That at all times hereinafter mentioned, defendant, Gregory Kliot, was an employee of the defendant Methodist.

16. That at all times hereinafter mentioned, defendant, Melissa Montes, was an employee of the defendant Methodist.

17. That at all times hereinafter mentioned, defendant, Chavi Shapiro, was an employee of the defendant Methodist.

18. That at all times hereinafter mentioned, defendant, Levica Narine, was an employee of the defendant Methodist.

19. That at all times hereinafter mentioned, defendant, Cheryl Schleber, was an employee of the defendant Methodist.

20. That at all times hereinafter mention the defendants, Kliot, Montes, Shapiro, Narine and Schleber were acting within the scope of their employment with the defendant Methodist.

21. That at all times hereinafter mention the defendant, Methodist is vicariously liable for the acts of the defendants Kliot, Montes, Shapiro, Narine and Schleber, as well as their agents, servants and/or employees.

22. That at all times hereinafter mention the defendants, Kliot, Montes, Shapiro, Narine and Schleber were acting within the scope of their employment with the defendant David A. Kliot MD, P.C.

23. That at all times hereinafter mention the defendants, Kliot, Montes, Shapiro, Narine and Schleber were acting within the scope of their employment with the defendant

Kliot Obstetrics and Gynecology, P.C.

24. That at all times hereinafter mention the defendant, David A. Kliot MD, P.C. is vicariously liable for the acts of the defendants Kliot, Montes, Shapiro, Narine and Schleber, as well as their agents, servants and/or employees.

25. That at all times hereinafter mention the defendant, Kliot Obstetrics and Gynecology, P.C. is vicariously liable for the acts of the defendants Kliot, Montes, Shapiro, Narine and Schleber, as well as their agents, servants and/or employees.

26. That on or about February 12, 2003, through and including October 24, 2003, and prior thereto, plaintiff's decedent came under the care and treatment of the defendants Cheryl Schleber, Gregory Kliot and David A. Kliot MD, P.C., and Kliot Obstetrics and Gynecology, P.C. herein, and their agents, servants and/or employees.

27. That on or about September 14, 2003, through and including October 24, 2003, and prior thereto, plaintiff's decedent came under the care and treatment of the defendants Methodist, Montes, Shapiro, Narine, Schleber and Kliot herein, and their agents, servants and/or employees.

28. That the defendants, their agents, servants and/or employees failed in their care and treatment of the plaintiff's decedent to treat and care for her in accordance with the standards of care and treatment generally accepted in the community and to use in their care and treatment of plaintiff's decedent, approved methods in general use and to use reasonable care and skill and to use their best judgment in the care and treatment of this plaintiff.

29. That the defendants, their agents, servants and/or employees were negligent in that they negligently and carelessly failed to treat and care for plaintiff's decedent in a careful and skillful manner; in that they negligently and carelessly failed to use and

utilize in the care and treatment of plaintiff's decedent, approved methods in general use; in negligently and carelessly failing to diagnose the condition from which plaintiff's decedent was suffering and failed to treat this condition from which plaintiff's decedent was suffering with resultant serious personal injury to plaintiff's decedent; in negligently and carelessly rendering prenatal, preoperative, operative and postoperative care; in negligently and carelessly failing to use proper tests and examinations in order to diagnose the condition from which plaintiff's decedent was suffering and were otherwise negligent and careless in the premises.

30. That the foregoing was caused without any negligence on the part of the plaintiff or plaintiff's decedent contributing thereto.

31. That as a result of the foregoing, plaintiff's decedent was caused to and did sustain severe and grievous personal injuries, resulting in death.

32. That by reason of the foregoing, plaintiff has been severely and permanently injured and damaged and, accordingly, seeks appropriate recompense.

33. That as a result of the foregoing; the amount of damages sought herein exceeds the jurisdictional limits of all lower Courts which might otherwise have jurisdiction herein.

<u>AS AND FOR A SECOND CAUSE OF ACTION</u>:

34. Plaintiff repeats, reiterates and realleges each and every allegation set forth in Paragraphs 1 through 33 inclusive, of this complaint, with the same force and effect as though more fully set forth at length herein.

35. That defendants failed to inform the patient of the risks, hazards and alternatives connected with the procedure so that an informed consent could be given, as a

consequence of which there was no informed consent to the procedure.

36.  That a reasonably prudent person in plaintiff's decedent's position would not have undergone the treatment, medical procedures or diagnosis if she had been fully informed and that the lack of informed consent is proximate cause of the injury or condition for which recovery is sought.

37.  That as a result of the foregoing, plaintiff has been severely and permanently injured and damaged and, accordingly, seeks appropriate recompense.

38.  That as a result of the foregoing, the amount of damages sought herein exceeds the jurisdictional limits of all lower Courts which might otherwise have jurisdiction herein.

## AS AND FOR A THIRD CAUSE OF ACTION:

39. Plaintiff repeats, reiterates and realleges each and every allegation set forth in Paragraphs 1 through 33 of the first cause of action and paragraphs 34 through 38 of the second cause of action inclusive, of this complaint, with the same force and effect as though more fully set forth at length herein.

40.  That as a result of the foregoing, plaintiff's decedent was caused to suffer great pain, agony, nervous shock, fear of death and was caused great conscious pain and suffering until the time of her death.

41.  That as a result of the foregoing, plaintiff has been severely and permanently injured and damaged and, accordingly, seeks appropriate recompense.

42.  That as a result of the foregoing, the amount of damages sought herein exceeds the jurisdictional limits of all lower Courts which might otherwise have jurisdiction herein.

## AS AND FOR A FOURTH CAUSE OF ACTION:

43.    Plaintiff repeats, reiterates and realleges each and every allegation set forth in

Paragraphs 1 through 33 of the first cause of action, paragraphs 34 through 38 of the

second cause of action and paragraphs 39 through 42 of the third cause of action

inclusive, of this complaint, with the same force and effect as though more fully set

forth at length herein.

44.    That as a result of the foregoing, plaintiff became responsible for the expenses of

decedent's funeral and decedent's medical treatment and expenses,   and suffered

pecuniary loss as a result of her death.

45.    That as a result of the foregoing, plaintiff has been severely and permanently

injured and damaged and, accordingly, seeks appropriate recompense.

46.    That as a result of the foregoing, the amount of damages sought herein exceeds the

jurisdictional limits of all lower Courts which might otherwise have jurisdiction

herein.

WHEREFORE, plaintiffs demand judgment against the defendants herein for such

monetary relief or other relief as shall be called for by the proof and to be awarded by the

Court and/or jury, together with interest costs and disbursements of the action; and the

amount of damages sought herein exceeds the jurisdictional limits of all lower Courts which

might otherwise have jurisdiction herein.

Dated, New York, NY
     April 15, 2004

ALAN R. CHORNE
Attorneys for Plaintiff
150 Broadway
New York, NY 10038
(212) 349-9100

## ATTORNEY'S AFFIRMATION

The undersigned, an attorney admitted to practice in the Courts of the State of New York, affirms the following under penalty of perjury pursuant to CPLR 2106:

Deponent is the attorney of record for the plaintiff(s) herein, that deponent has read the foregoing summons and complaint and knows the contents thereof; that same is true to deponent's own knowledge, except as to those matters therein stated to be alleged on information and belief, and that as to those matters deponent believes it to be true.

Deponent further says that the reason this verification is made by deponent and not by plaintiff is that plaintiff does not reside or maintain an office in the County where this deponent maintains his office.

The grounds of deponent's belief as to all matters not stated upon deponent's knowledge are as follows: Records, reports and documentation supplied by plaintiff.

Dated: New York, NY
      April 15, 2004

ALAN R. CHORNE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

JEAN LEOPOLD MERILAN, as Administrator of the goods, chattels and credits which were of MARIE S. DORLUSCA, deceased,

                   Plaintiff,

            -against-

THE NEW YORK METHODIST HOSPITAL, CHERYL SCHLEBER, GREGORY KLIOT M.D., DAVID A. KLIOT, MD, P.C., KLIOT OBSTETRICS & GYNECOLOGY, P.C., MELISSA MONTES M.D., LEVICA NARINE M.D., and CHAVI SHAPIRO M.D.

                   Defendants.

Index#

**Certificate of Merit**

ALAN R. CHORNE, an attorney duly admitted to practice in the Courts of the State of New York, hereby affirms, pursuant to Section 2106 CPLR:

The facts of this case have been reviewed and consultation has been had with at least one physician who is licensed to practice in this state, or any other state, and it is reasonably believed that said physician is knowledgeable as to the relevant issues involved in this particular action and it has been concluded on the basis of such review and consultation that there is a reasonable basis for the commencement of this action.

Dated: New York, New York
     April 15, 2004

                                          
                               ALAN R. CHORNE

Index No.                    Year 2004

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF KINGS

JEAN LEOPOLD MERILAN, as Administrator
of the goods, chattels and credits which were of
MARIE S. DORLUSCA, deceased,

                    Plaintiff,

        -against-

THE NEW YORK METHODIST HOSPITAL,
CHERYL SCHLEBER, GREGORY KLIOT M.D.,
DAVID A. KLIOT, MD, P.C., KLIOT
OBSTETRICS & GYNECOLOGY, P.C.,
MELISSA MONTES M.D., LEVICA NARINE M.D.,
and CHAVI SHAPIRO M.D.

                    Defendants.

## SUMMONS, COMPLAINT, AFFIDAVIT OF MERIT

### ALAN R. CHORNE
Attorney at Law
150 Broadway

*Office and Post Office Address, Telephone*
New York, NY 10038
(212) 349-9100

To:

FILED
KINGS COUNTY CLERK
2004 APR 19  AM 11:26



## Section I.G
# WHEN OTHERS ARE RESPONSIBLE FOR YOUR ILLNESS OR INJURY

If someone else is responsible for Your illness or injury, for example, because of an accident, You may be able to recover money from that person, their insurance company, an uninsured motorist fund, or no-fault insurance carrier. **Expenses, such as disability, hospital, medical, prescription drugs or other services, resulting from such an illness or injury caused by the conduct of a third party, are not covered by this Plan.**

However, the Plan Administrator recognizes that often the responsibility for injuries or illness is disputed. Therefore, in certain cases, as a service to you and if you follow the required procedures, the Fund may advance benefit payments to you, or on your behalf, before the dispute is resolved.

When another party is responsible for an illness or injury, the Plan Administrator has rights to recover the full amount it has paid or will pay related to any claims, which You may have against any person or entity. This means you are assigning your rights in any recovery to the Fund to the extent of the Fund's payments on your behalf. The Fund's right to recover the payments comes before you can recover. Therefore, the Fund has an independent right to bring an action in connection with such an injury or illness in Your name and also has a right to intervene in any such action brought by You. It also means that the Fund has an equitable lien on the proceeds of any verdict or settlement reached in a lawsuit that You bring against someone for causing an illness or injury, when the Fund has paid for costs arising from that person's actions. The Fund has a right to be repaid from those proceeds. You must notify the Fund of any accident or injury for which someone else may be responsible. Further, the Fund must be notified of initiation of any lawsuit arising out of the accident or incident.

You are required to provide the Fund with any and all information and to execute and deliver all necessary documents as the Plan Administrator may require to enforce the Fund's rights. Once the Fund learns that another party may be responsible, You must sign an agreement (or a "lien") affirming the Fund's rights with respect to benefit payments and claims. Benefit payments are not payable until this agreement is signed and received by the Fund.

If You receive payments from or on behalf of the party responsible for an illness or injury, the Fund must be repaid from those payments. You must repay the Fund regardless of whether the total amount of the recovery is less than the actual loss and even if the party does not admit responsibility, itemize the payments, or identify payments as medical expenses. You cannot reduce the amount of the Fund's payments to pay for attorneys fees incurred to obtain payments from the responsible party. The Fund's rights provide the Fund with first priority to any and all recovery in connection with the injury or illness. The Fund has these rights without regard to whether You have been "made-whole."

If You fail or refuse to sign a lien or to comply with these terms, the Plan Administrator may suspend your eligibility for benefits and/or recover from providers money paid to them until the Fund is fully repaid. In addition, the Plan Administrator may bring a court action against You to enforce the terms of the Plan.

By accepting the Fund's payments, you are consenting to a constructive trust being placed on the amount owed to the Fund out of any proceeds.

### WHEN MOTOR VEHICLE OR NO-FAULT INSURANCE PROVIDES COVERAGE

This provision is expressly intended to avoid the possibility that this Plan will be primary to coverage that is available under motor vehicle or no-fault insurance.

**This Plan is *secondary* to:**

- Coverage provided under any "no-fault" provision of any motor vehicle insurance statute or similar statute

 *and*

- Coverage provided under motor vehicle insurance which provides for health insurance protection, even if you (your spouse or your covered children) select coverage under the motor vehicle insurance as secondary.

However, the Fund will be the primary payer for disability benefits, which will be paid at the statutory disability rate.



January 9, 2008

Mr.Alan Chorne, Esq.
150 Broadway - 14th Floor
New York, NY 10038

**RE: Marie Dorlusca     FILE#: 9006502690     Jean Merilan (Administrator of Estate)**
**D/A: 9/14/2003**

Dear Mr. Chorne:

Enclosed is a Notice of Right to Reimbursement for benefits paid on behalf of your client.
Please note that you have been put on notice of the Fund's right to reimbursement as
required by the Plan. A copy of the appropriate page of the Fund's Summary Plan
Description Booklet is attached for your review.

I have also enclosed the appropriate Benefit Fund assignment forms to be completed by
you and your client.

Upon receipt of the fully executed assignment form the Fund will process payment of any
outstanding hospital, disability or medical bills, which were previously rejected.

If the assignment form is not returned any outstanding bills will not be paid by the
Fund.

If you have any questions, I can be reached at (646) 473-6707.

Sincerely,


Annmarie Peart
Manager
W/C & Third Party Liens


AP/td

January 9, 2008

Mr.Alan Chorne, Esq.
150 Broadway - 14th Floor
New York, NY 10038

**RE: Marie Dorlusca**   **FILE#: 9006502690**   **Jean Merilan (Administrator of Estate)**
**D/A: 9/14/2003**

Dear Mr. Chorne:

**NOTICE OF RIGHT OF REIMBURSEMENT**
**&**
**SUBROGATION**

The National Benefit Fund has paid benefits total **$141,646.05** relating to **Marie Dorlusca's accident on 9/14/2003. (See attached itemization of benefits paid)**. Please be advised that you have been put on notice of the Fund's right to be reimbursed for expenses paid on your client's behalf.

The Fund's position is based on the Employee Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §1001, et seq. The Benefit Fund is a self-funded, jointly-trusted Employee Welfare Benefit Fund as defined in ERISA and is administered in accordance with a written plan of benefits, the Summary Plan Description ("SPD"). 29 U.S.C. 1002(1), 29 U.S.C.§1022. ERISA pre-empts " any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144. Attached is a copy of the appropriate page of the Summary Plan Description booklet. (SPD).

If you would like more information on our plan, please visit our website at www.1199nbf.org.

Please note your file accordingly. Prior to any settlement you must contact the Benefit Fund's Third Party Lien Unit at 646-473-6707 or 646-473-6717, to determine the final amount of the lien.

Sincerely,

Annmarie Peart
Manager
W/C & Third Party Liens

AP/td

LIEN FORM- OFFICE FILE

NAME OF MEMBER        MARIE DORLUSCA
SOCIAL SECURITY #     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
PATIENT'S NAME        JEAN MERILAN ADMINISTRATOR OF ESTATE
PLACE OF EMPLOYMENT   PENINSULA HOSPITAL NURSING
EFFECTIVE DATE        09/20/00
MEMBER'S STATUS       INACTIVE
TYPE OF ACCIDENT      MEDICAL MALPRACTIVE
DATE OF ACCIDENT      09/14/03
DIAGNOSIS             SEVERE PRE-ECLAMPSIA
ICD9 CODE:            642.52

INDEX#:               12357/2004

| | AMOUNT PAID | CHARGES PENDING | TOTAL LIEN |
|---|---|---|---|
| DISABILITY | $0.00 | $0.00 | $0.00 |
| MEDICAL | $32,661.00 | $0.00 | $32,661.00 |
| HOSPITAL | $108,985.05 | $0.00 | $108,985.05 |
| PRESCRIPTIONS | $0.00 | $0.00 | $0.00 |
| SUB-TOTAL | $0.00 | $0.00 | $0.00 |
| PENDING | $0.00 | $0.00 | $0.00 |
| TOTAL LIEN | $141,646.05 | $0.00 | $141,646.05 |

ATTORNEY FOR MEMBER:   MR. ALAN R. CHORNE, ESQ.
                       150 BROADWAY - 14TH FLOOR
                       NEW YORK, NY 10038


TELEPHONE              212-349-9100
FAX                    212-385-1916


MEMBER'S ADDRESS       600 EAST 26TH STREET, # 1D
                       BROOKLYN, NY 11210


COMPLETED BY           TAMARA DUCLOSEL


3NBF 23





National Benefit Fund (646) 473-9200 | Pension Fund • (646) 473-8666
Greater New York Benefit Fund • (212) 541-9150 | Pension Fund • (646) 473-8666
Home Care Employees Benefit and Pension Funds • (646) 473-9200
Home Health Aide Benefit Fund • (646) 473-7470

330 WEST 42ND STREET ■ NEW YORK, NY 10036-6977 ■
WWW.1199NBF.ORG
31ˢᵗ Flr., Legal Department • Writer's Direct: phone (646) 473-6041
facsimile (646) 473-6049
email SMetzger@1199nbf.org

April 28, 2008

*Via Overnight U.P.S. Mail*

Alan R. Chorne, Esq.
Attorney at Law
150 Broadway
New York, NY 10038

**Re:**  **Jean Leopold Merilan, as Administrator for the Estate of Marie S. Dorlusca**

Dear Mr. Chorne:

As you are aware, the 1199SEIU National Benefit Fund ("Fund") has asserted an equitable lien against Marie DorlJean Leopold, insofar as she is the representative for the estate of Marie S. Dorlusca. I understand that in a recent conversation with Ms. Fong-Sam of the Fund's Liens Department, you disavowed the Fund's right to a lien, claiming that the settlement was entirely in consideration for damages to the distributees of Ms. Dorlusca's estate. The Fund's position remains that its lien has attached to the recovery, up to the amount apportioned to recovery by the estate. If you do not intend to honor the Fund's lien, I will bring an action in federal court in order to protect the Fund's rights and enforce the lien. You can call me directly to discuss this matter, but in order to have a more informed conversation, I write now to address your contention.

I understand that Marie Dorlusca left a spouse and two teen-aged children, and that they may have had a wrongful death action. However, the underlying complaint clearly asserts a personal injury claim, based on medical malpractice. The complaint, among other things, asserts a cause of action for her pain and suffering, for "resultant serious injuries," and for the original treatment which lacked informed consent, and which she would not have undergone had she been properly informed. The Fund has asserted a lien in the amount of $141,646.05, which was the total cost of Ms. Dorlusca's medical and hospital bills for the injuries giving rise to the underlying complaint.

Marie Dorlusca was a beneficiary of the Fund's welfare plan during all relevant times to this dispute. The Fund is not claiming a statutory or contractual lien against Marie Dorlusca, and is also not asserting a legal subrogation claim. Rather, the Fund is a trust fund, and has an equitable lien against any recovery by Marie Dorlusca (our beneficiary), or by a representative

Although these Funds are jointly administered, benefits are subject to each Fund's Summary Plan Description (SPD) and the discretion of the Trustees of that Fund.

of Ms. Dorlusca or her estate, based on the terms of the Fund's benefit plan, which is enforceable under the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001, et seq. ERISA pre-empts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144. In accordance with ERISA, under its preemption rules, the Fund must be administered in accordance with the terms of the plan, even where those terms are inconsistent with state law. *See Egelhoff v. Egelhoff*, 532 U.S. 141, 151 n.4 (2001). As a beneficiary of the Fund, Marie Dorlusca was subject to the terms and conditions of the Fund's Plan. Under the terms of the Plan, expenses resulting from an illness or injury caused by a third party are not covered by the Plan. (*See* SPD, Section I.G and VII.D). The Fund, in its discretion, may advance benefit payments while the third-party dispute is being resolved.

As an ERISA plan, the Fund is governed under ERISA, which is not unlike the principles of common law trusts. Indeed, as I mentioned above, the Fund also happens to be a trust; the Fund is a multi-employer trust fund established in accordance with section 186(c) of the Labor Management Relations Act, 1947, a self-funded, jointly-trusted "employee welfare benefit plan" as that term is defined in ERISA and a Voluntary Employee Beneficiary Association, as that term is defined in section 501(c)(9) of the Internal Revenue Code. The Fund is administered in accordance with the Summary Plan Description ("SPD" or "Plan"), which is distributed to all members upon enrollment. 29 U.S.C. 1002(1), 29 U.S.C. § 1022. Please be advised the SPD if the Fund's entire plan. The Fund is not an insurance company, nor is the Fund deemed an insurance company merely because it provides health benefits. *See* U.S.C.A. 29 § 1144(b)(1),(2)(A)-(B). The fact that the Fund is a self-funded trust fund, and not an insurer, is significant in the area of ERISA preemption because although state laws regulating insurance (arguably, CPLR §4545), are saved from preemption by ERISA against insurers and insurance contracts, such statutes are nevertheless held to be preempted to the extent they are applied to self-funded ERISA plans, such as the Fund, by operation of the "deemer" clause. *See FMC Corp. v. Holliday*, 498 U.S. 52, 55, 111 S. Ct. 403, 406 (1990)(holding that a Pennsylvania anti-subrogation law was preempted by ERISA). Thus, state laws such as CPLR §4545 are preempted by ERISA, and do not apply to the Fund.

A state court has no jurisdiction to either quash or uphold an ERISA lien, or to compel payment of benefits, as any causes of action relating to the administration of an ERISA plan are preempted by ERISA. You will find that when federal courts adjudicate ERISA cases, they adhere to the terms of the plan as interpreted by the Plan Administrator, unless the plan directly contradicts a specific provision of ERISA, or unless the Plan Administrator's determination is an arbitrary and capricious interpretation of its own terms. *Firestone Tire & Rubber Co. v. Bruch, et al.*, 489 U.S. 101, 115 (1989). In other words, if the Fund filed an ERISA action to enforce its lien, or if Marie Dorlusca filed an action seeking to overturn a benefit denial, the courts will not look outside ERISA and the plan, i.e., will not consider other principles of statutory or common law. I understand that the distributions of the recovery must be approved by the Surrogate's Court. You should include the amount of the Fund's lien in the proposed order; however, the Surrogate's court has no authority to waive or eliminate the Fund's lien. (See a recent EDNY interim order, attached).

The Fund's Plan language unambiguously bars benefits for expenses resulting from an injury caused by a third party. The Fund has advanced payment for medical expenses to Marie Dorlusca for injuries caused by a third-party, and any recovery thereof, up to the amount of benefits paid, belongs in good conscience to the Fund. By accepting the Fund's advanced payments, Marie Dorlusca had already agreed to an "equitable lien by assignment or agreement," which in enforceable under ERISA. *Sereboff v. Mid Atl. Med. Servs.*, 547 U.S. 356

(U.S. 2006).  In other words, the lien was established the moment she received the benefits
without regard to whether the funds it attached to are yet identified or in existence.  *Id.* at 1876
(holding that "[a]n agreement to charge, or to assign property not yet in existence, although
creating no legal estate or interest in the things when they afterwards come into existence, does
constitute an equitable lien upon the property")(*citations omitted*).  To be sure, the lien
acknowledgment required by the Fund is simply the Fund's way of ensuring that the participant
intends to honor the lien without the Fund needing to bring a claim in federal court to protect its
rights; the lien is not based on the acknowledgment, it is based on the Plan.

The Fund's SPD specifically allows the **right of first reimbursement** out of any recovery.  An
ERISA plan's right to a lien is not limited to funds specifically identified as compensation for
prior medical expenses on behalf of a participant, and is not limited to funds remaining after the
participant has been "made-whole."  That is to say, the "make-whole" doctrine does not apply
to ERISA plans seeking restitution of benefit payments from third-party recoveries, particularly
where the plan unambiguously disavows make-whole principles (as does the Fund's plan).  *Id.;
see Moore v. CapitalCare, Inc.*, 461 F.3d 1 (D.C. Cir. 2006); *Beveridge v. Benefit Recovery
Inc.*, et. al., 2006 U.S. Dist. LEXIS 50942 (Dist. AZ July 21, 2006).  Moreover, the *Sereboff*
case makes it explicit that the Fund need not "trace" funds in compensation for medical
expenses into the hands of the participant's representative, as "**this is not merely a subrogation
claim**." *Sereboff v. Mid Atlantic Medical Services; see also e.g., Dillard's Inc. v. Liberty Life
Assur. Co.*, 456 F.3d 894 (8th Cir. 2006); *Popowski v. Parrott*, 461 F.3d 1367 (11th Cir. 2006);
*Unum Life Ins. Co. of Am. v. Lynch*, No. 04-cv-9007, 2006 U.S. Dist. LEXIS 7160 (SDNY Jan.
31, 2006 ); *and McIntyre v. Carpenters Health and Security Trust of Western Washington*, No.
C05-5724FDB, 2006 U.S. Dist. LEXIS 3759 (W.D. Wash., Jan. 13, 2006).  Thus, regardless of
whether how you characterize the settlement, the Fund's lien attaches to the estate's recovery.

If you would like more information on our plan, or would like a copy of the Fund's entire SPD,
you can visit our website at www.1199funds.org.  Please call me if you wish to discuss this
matter further; I can be reached at (646) 473-6041.

Very truly yours,

Suzanne Metzger
Associate Counsel

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
TRUSTEES OF THE 1199SEIU NATIONAL
BENEFIT FUND FOR HOME CARE EMPLOYEES,

                    Plaintiff,              <u>MEMORANDUM & ORDER</u>
                                                  07-CV-523 (JS)(ARL)

        -against-

ROGER RODRIGUEZ, Administrator of the
Estate of Maria Lopez, and
ANDREW ROSNER, ESQ.,

                    Defendants.
-----------------------------------X
APPEARANCES:
For Plaintiff:        Suzanne Alissa Metzger, Esq.
                    1199SEIU National Benefit Fund
                    330 West 42nd Street
                    New York, NY 10036

For Defendants:       Andrew Rosner, Esq.
                    David Shumer, Esq.
                    600 Old Country Road, Suite 307
                    Garden City, NY 11530

SEYBERT, District Judge:

        Plaintiff Trustees of the 1199SEIU National Benefit Fund

for Home Care Employees ("Plaintiff") commenced this action via

order to show cause on February 6, 2007 seeking, <u>inter alia</u>, a

temporary restraining order ("TRO") and preliminary injunction

("PI") creating an equitable constructive trust and a declaration

of rights pursuant to the Employee Retirement Income Security Act

of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 <u>et seq.</u> Presently

pending is Defendants Andrew Rosner, Esq., and Roger Rodriguez,

Administrator of the Estate of Maria Lopez (collectively,

"Defendants") motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

BACKGROUND

I.   <u>Procedural History</u>

The Parties appeared before this Court on May 11, 2007 for a hearing on the TRO and PI application.  At the hearing, Plaintiff withdrew its application for a TRO and PI.  (TRO Hr'g Tr. 13, May 11, 2007.)  The Parties indicated at the hearing that they might be able to reach an agreement if Defendants were not potentially challenging whether 1199SEIU National Benefit Fund for Home Care Employees (the "Fund") is an ERISA plan.  (Hr'g Tr. 9.) As a result, by Order dated July 23, 2007, this Court determined that the Fund is an "employee welfare benefit plan" governed by ERISA.  Although the Court made such determination, there has been no indication by the parties that they have reached an agreement. Accordingly, the Court now addresses Defendants motion to dismiss.

II.  <u>Factual History</u>

The following facts are taken from the Amended Complaint and are presumed to be true for the purpose of the motion to dismiss.

The Fund is a multi-employer trust fund established in accordance with Section 186(c) of the Labor Management Relations Act of 1947 and self-funded "employee welfare benefit plan" (the

2

"Plan"), as that term is defined by ERISA, that provides medical benefits to eligible participants. (Compl. ¶¶ 2-3, 13-14.) Plaintiff is a fiduciary of the Fund. (Id. ¶ 2.) The Fund provides coverage in accordance with a written summary plan description ("SPD"), which is distributed to participants upon enrollment in the Fund. (Id. ¶¶ 4, 15.) The Fund is entirely financed with contributions from certain employers pursuant to various collective bargaining agreements between members of the 1199SEIU United Healthcare Workers East (the "Union") and healthcare employers. (Id. ¶¶ 5, 16.) The Union is a labor union that represents hundreds of thousands of health care workers throughout the northeast. (Id. ¶ 17.)

On July 2, 2003, Defendant Maria Lopez was injured due to alleged medical malpractice. (Id. ¶ 18.) Prior to Ms. Lopez's death, and at the time she was injured, Ms. Lopez was a member of the Union and a participant in the Fund and the Plan. (Id. ¶¶ 6, 19.) As a result of the injuries stemming from the medical malpractice, the Fund paid out $108,463.73 in hospital, medical and disability benefits for Ms. Lopez's treatment. (Id. ¶ 20.)

Section I.G. of the SPD provides, in relevant part,

> [i]f someone else is responsible for [the participant's] illness or injury, for example, because of an accident, [the participant] may be able to recover money from that person, their insurance company, an uninsured motorist

3

> fund, or no-fault insurance carrier.
> Expenses, such as disability, hospital,
> medical, prescription drugs or other services,
> resulting from such an illness or injury
> caused by the conduct of a third party, are
> not covered by this Plan.

(Id. ¶ 24, Peart Aff. Ex. A. § I.G.)  The SPD goes on to explain

that, in such circumstances, the Fund will advance benefit payments

on the participant's behalf and then seek reimbursement.  The SPD

specifically provides that the "Fund's right to recover the

payments comes before [the participant] can recover." In addition,

the SPD provides that the "Fund has an equitable lien on the

proceeds of any verdict or settlement reached in a lawsuit that

[the participant] bring[s] against someone for causing an illness

or injury, when the Fund has paid for costs arising from that

person's actions." (Id.)  Based on these provisions, the Fund

asserts that it is has an equitable lien and right to equitable

restitution equal to $108,463.73, the amount it paid out in

connection with Ms. Lopez's injuries. (Id. ¶¶ 23, 25.)

On or about January 20, 2005, the Fund learned that

Defendant Roger Rodriguez ("Rodriguez"), as administrator of Ms.

Lopez's estate, commenced suit in the Supreme Court of the State of

New York, Kings County, relating to the medical malpractice

injuries that Ms. Lopez suffered on July 2, 2003. (Id. ¶¶ 21-22,

27.)  Over the next two years, Fund employees and its counsel

repeatedly tried to contact Defendant Andrew Rosner, attorney for
Ms. Lopez's estate, via phone and mail.  Over the two years,
AnnMarie Peart, Manager of the Fund's Liens Department, had spoken
with people in Rosner's office on a couple of occasions, but she
was unable to learn much information about the state lawsuit.  (Id.
¶¶ 28-32.)  Therefore, the Fund has been unable to assess the
status of its lien.  Meanwhile, on March 17, 2005, counsel for the
Fund sent Rosner a letter explaining the Fund's right to assert a
lien, relevant portions of the SPD, and case citations, and, on
March 28, 2005, Ms. Peart sent Rosner a notice of its assertion of
a lien, together with an itemization of benefits paid.  (Id. ¶¶ 33-
35.)  Unable to reach Mr. Rosner over the next year, on July 13,
2006, Ms. Peart sent Rosner another notice of the Fund's assertion
of a lien, with an updated itemization of benefits paid subject to
such lien.  (Id. ¶ 37.)  In October 2006, the Fund learned that
Rodriguez discontinued the state court action against one of the
Defendants in that case, Mt. Sinai Hospital, but did not know
whether there was a settlement involved.  (Id. ¶¶ 22, 38.)
Immediately upon learning of the discontinuance, the Fund's counsel
sent written notice to Rosner, reminding him of the Fund's lien,
and advising that the Fund would be taking legal action if it did
not hear back from him.  (Id.)  This action followed.

<u>DISCUSSION</u>

I.   <u>Standard Of Review</u>

        In <u>Bell Atl. Corp. v. Twombly</u>, -- U.S. --, 127 S. Ct.
1955, 167 L. Ed. 2d 929 (2007), the Supreme Court disavowed the
half-century old standard set forth in <u>Conley v. Gibson</u> that "a
complaint should not be dismissed for failure to state a claim
unless it appears beyond doubt that the plaintiff can prove no set
of facts in support of his claim which would entitle him to
relief." <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S. Ct. 99, 2 L.
Ed. 2d 80 (1957), (<u>overruled by</u> <u>Bell Atl. Corp.</u>, 127 S. Ct. 1955
(2007). Holding that "<u>Conley</u>'s 'no set of facts' language has been
questioned, criticized, and explained away long enough," the
Supreme Court expressly rejected the standard in favor of a
requirement that the plaintiff plead enough facts "to state a claim
for relief that is plausible on its face." <u>Bell Atl. Corp.</u>, 127 S.
Ct. at 1969, 1974. The Court explained that the complaint "must be
enough to raise a right to relief above the speculative level."
<u>Id.</u> at 1965.    To be clear, <u>Bell Atlantic</u> does not require
"heightened fact pleading of specifics, but only enough facts to
state a claim for relief that is plausible on its face." <u>Id.</u> at
1974.

        The Second Circuit has interpreted <u>Bell Atlantic</u> to
require "a flexible 'plausibility standard,' which obliges a

pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v. Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007). In applying this standard, the district court must still accept the factual allegations set forth in the Complaint as true and draw all reasonable inferences in favor of Plaintiff. See Cleveland v. Caplaw Enter., 448 F.3d 518, 521 (2d Cir. 2006); Nechis v. Oxford Health Plans, Inc., 421 F.3d 96, 100 (2d Cir. 2005).

In deciding a 12(b)(6) motion, the Court is confined to "the allegations contained within the four corners of the complaint." Pani v. Empire Blue Cross Blue Shield, 152 F.3d 67, 71 (2d Cir. 1998.) Additionally, the Court may examine "any written instrument attached to [the complaint] or any statements or documents incorporated in it by reference" as well as any document on which the complaint relies heavily. Chambers v. Time Warner, Inc., 282 F.3d 147, 152-153 (2d Cir. 2002). "Of course, it may also consider matters of which judicial notice may be taken under Fed. R. Evid. 201." Kramer v. Time Warner, Inc., 837 F.2d 767,773 (2d Cir. 1991).

II.   ERISA

Having combined their opposition to the TRO and PI with their cross-motion to dismiss, Defendants' arguments in support of their motion to dismiss are not entirely clear. As best the Court

can discern, Defendants contend that the Complaint should be
dismissed because (1) the lawsuit is premature, (2) any request by
the Fund for restitution must be made in the New York State
Surrogate's Court, not federal court, and (3) Plaintiff has failed
to state a claim.  The Court first addresses whether this Court is
the proper forum for this action and then addresses Defendants'
other two arguments simultaneously.

    A.    Exclusive Jurisdiction

        Plaintiff brought this action to obtain declaratory
relief related to a lien established under an ERISA plan pursuant
to Section 502(a)(3) of ERISA.  Section 502(a)(3) provides that a
fiduciary, participant or beneficiary may bring a civil action "(A)
to enjoin any act or practice which violates any provision of this
title or the terms of the plan, or (B) to obtain other appropriate
equitable relief (i) to redress such violations or (ii) to enforce
any provisions of this title or the terms of the plan." 29 U.S.C.
§ 1132(a)(3).  With limited exceptions, not applicable here,
Section 502(e)(1) confers exclusive jurisdiction on federal courts
for civil action arising under Section 502.    29 U.S.C. §
1132(e)(1). Moreover, "the express pre-emption provisions of ERISA
are deliberately expansive, and designed to establish pension plan
regulation as exclusively a federal concern." Pilot Life Ins. Co.
v. Dedeaux, 481 U.S. 41, 45-6, 107 S. Ct. 154, 95 L. Ed. 2d 39

8

(1987) (internal quotation marks and citations omitted). Although Defendants argue that the Surrogate's Court is perfectly capable of handling issues arising under ERISA, it is abundantly clear that it would not be proper for it do so in this case. Accordingly, this action is properly before this Court.

    B.    Failure To State A Claim

        As noted, Defendants' arguments that the action is premature and without merit can be disposed of simultaneously. In sum, Defendants' prematurity argument is that there are no funds, as of yet, to set aside or on which to place a lien. (Defs.' Mem. 4.) Furthermore, Defendants contend that the Fund has not provided any evidence that any of the expenses it paid out were related to the underlying medical malpractice. (Id. at 5.) The Court disagrees.

        There are two recent Supreme Court decisions interpreting the remedies available under ERISA Section 502(a)(3): Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204, 122 S. Ct. 708, 151 L. Ed. 2d 635 (2002), and Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356, 126 S. Ct. 1869, 164 L. Ed. 2d 612 (2006). Both cases involve the ability of an ERISA fiduciary to obtain, pursuant to Section 502(a)(3), reimbursement of benefits paid out where the benefit plan document contained a reimbursement or subrogation provision, such as the SPD in this action.

9

In <u>Knudson</u>, the Supreme Court explained that restitution could constitute equitable relief or legal relief, depending on "the basis for the plaintiff's claim and the nature of the underlying remedies sought." <u>Knudson</u>, 534 U.S. at 213 (internal quotation marks omitted). Restitution in equity is typically in the "form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." <u>Id.</u> Moreover, "for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." <u>Id.</u> at 214.

The Knudsons were injured in an automobile accident, and Great-West covered approximately $335,000 in medical expenses pursuant to a health and welfare plan, which contained a reimbursement provision. <u>Id.</u> at 207. The Knudsons subsequently filed a tort action in state court against the car manufacturer and others. <u>Id.</u> The state court parties negotiated a $650,000 settlement, pursuant to which $256,745.30 was allocated to a Special Needs Trust to provide for Ms. Knudson's medical care, $373,426 to attorney's fees and costs, $5,000 to reimburse the state Medicaid program, and $13,828 to Great-West for reimbursement

under the benefit plan. Id. at 207-08. The terms of the settlement were approved in state court and the funds were paid directly to the Special Needs Trust and the attorney, who, in turn, tendered checks to Medicaid and Great-West. Id. at 208. Importantly, the settlement funds were never in the Knudsons' possession or control. Accordingly, the Knudsons did not hold particular funds that, in good conscience, belonged to Great-West. Id. at 214. Instead, the Supreme Court found that Great-West, in essence, was seeking to impose personal liability on the Knudsons for a contractual obligation to pay money because "the property sought to be recovered or its proceeds ha[d] been dissipated so that no product remain[ed]." Id. at 213 (internal quotation marks omitted). Therefore, Great-West sought legal restitution, not equitable restitution, which is not available under Section 502(a)(3). Id. at 214-15.

In Sereboff, the Supreme Court once again faced the issue of whether a plan could sue a beneficiary for reimbursement of medical expenses when the beneficiary has recovered for its injuries from a third party. The Sereboffs were injured in an automobile accident and sued the alleged tortfeasors in state court. 547 U.S. at 360. Soon after the state court action was commenced, Mid Atlantic asserted a lien on the anticipated proceeds from the suit for approximately $75,000 in medical expenses that

11

Mid Atlantic paid on the Sereboffs' behalf.  Id. Over the next two and one-half years, Mid Atlantic repeatedly sent the Sereboffs' attorney correspondence reiterating its claim and detailing the medical expenses.  Id. The welfare plan under which the Sereboffs were covered had a similar reimbursement provision as the one contained in the SPD in the instant action.  The Sereboffs eventually settled their state tort action for $750,000 and failed to reimburse Mid Atlantic.  Id.  The Sereboffs' attorney distributed the settlement proceeds to the Sereboffs, and Mid Atlantic sought a TRO and PI requiring them to retain and set aside $75,000 from the proceeds until the underlying claim could be decided.  Id.  The parties actually agreed and stipulated to preserve $75,000 of the settlement funds in an investment account.

The Supreme Court found that, unlike the fiduciary in Knudson, Mid Atlantic sought its recovery through a constructive trust or equitable lien on specifically identifiable funds that were within the possession and control of the Sereboffs, not from the Sereboffs' assets generally.  Id. at 363.  Accordingly, the Supreme Court held that Mid Atlantic sought equitable restitution and was entitled to a constructive trust or equitable lien pursuant to Section 502(a)(3).  Moreover, the Supreme Court explained that it was of no consequence that Mid Atlantic was not able to satisfy

12

the "strict tracing rules" because the equitable lien was established by agreement in the plan document. Id. at 364. It was of no consequence that the settlement proceeds were not in existence when the plan document, which contained the lien provision, was entered into. Id. at 366. The Court finds the facts here quite similar to those in Sereboff, including the failure of Defendants to acknowledge Plaintiff's repeated attempts at contact.

Defendants contend that Sereboff is distinguishable from this action for a number of reasons: (1) the underlying state court action here is a wrongful death action and, therefore, the Surrogate's Court is involved, while the underlying state court action in Sereboff was for medical malpractice - the plaintiffs were still alive; (2) Rodriguez, as administrator of Ms. Lopez's estate, is limited to the powers granted to him by the Surrogate's Court and does not have authority to settle the state court action or distribute proceeds of the estate; (3) here, there is no fear that Defendants will "walk off with the money" since the Surrogate's Court will determine how the proceeds will be distributed; and (4) since Plaintiff will be placed on notice of the Surrogate's Court proceedings and the proceeds from the state court action cannot be distributed without a decree from the Surrogate's Court, unlike Sereboff, there is no way that the

proceeds can be distributed before Plaintiff has a right to assert its claim.

The fact that the Surrogate's Court is involved in the underlying state court action has no effect on the viability of Plaintiff's ERISA claim and, as previously discussed, the Surrogate's Court does not have jurisdiction over Plaintiff's ERISA claim. The Court recognizes that Rodriguez, as administrator, does not have power to distribute funds from Lopez's estate without approval from the Surrogate's Court. Plaintiff, however, is not asking Defendants to hand over money; Plaintiff simply wants Defendants to recognize the equitable lien the Fund has on funds – up to $108,463.73 – that may be recovered for injuries Ms. Lopez suffered as a result of the medical malpractice. Such equitable lien was established by agreement in the SPD, even though the proceeds did not exist at the time Plaintiff enrolled in the Plan. See Sereboff, 547 U.S. 366-67. Furthermore, as conceded at the TRO/PI hearing, Plaintiff is not seeking a lien on proceeds awarded to Ms. Lopez' beneficiaries for their pain and suffering. (Hr'g Tr. 9-11.) Based on this concession and the Court's prior ruling that the Plan is governed by ERISA, the Court expected that the parties would have reached some tentative agreement pending the outcome of the state court action and any proceedings in the Surrogate's Court. Nevertheless, it appears that they did not.

As for Defendants' remaining arguments, Plaintiff has much more to fear than Defendants running off with the money. Pursuant to <u>Knudson</u> and <u>Sereboff</u>, if Plaintiff does not preserve its claim now, and the Surrogate's Court distributes proceeds that may be recovered in the state court action to the beneficiaries or directly into a trust over which Ms. Lopez's estate has neither possession or control, Plaintiff will be without recourse. Defendants do not have to go anywhere with the money; the identifiable funds need merely to be placed in with other assets generally and Plaintiff will be unable to recover under Section 502(a)(3).  <u>See</u> <u>Knudson</u>, 534 U.S. at 213-14.

The Court finds that Plaintiff has sufficiently stated a cause of action redressable under Section 502(a)(3) of ERISA.  At this point, Plaintiff need not prove its case, it must merely allege facts that raise its "right to relief above the speculative level," which it has done.  <u>Bell Atlantic</u>, 127 S. Ct. at 1965.

<u>CONCLUSION</u>

For the reasons set forth above, Defendants' motion to dismiss is DENIED.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated: March <u>31</u>, 2008
       Central Islip, New York

15
